IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

ROY PACHECANO,            )
                                   )
         Plaintiff,        )
                                   )
    vs.                    )
                                 )    NO. SA-11-CV-00805-DAE
                                 )
JPMORGAN CHASE BANK    )
NATIONAL ASSOCIATION AKA )
CHASE HOME FINANCE, LLC,  )
                                 )
         Defendant.      )
_____ )

ORDER: (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT; (2) DENYING PLAINTIFF'S MOTION FOR LEAVE OF COURT
TO AMEND PLEADINGS

Before the Court is the Motion for Summary Judgment brought by

Defendant JPMorgan Chase Bank, N.A. ("Defendant") and the Motion for Leave

of Court to Amend Pleadings brought by Plaintiff Roy Pachecano ("Plaintiff").

After reviewing the motions and the supporting and opposing memoranda, the

Court **GRANTS** Defendant's Motion for Summary Judgment (doc. # 28) and

**DENIES** Plaintiff's Motion for Leave of Court to Amend Pleadings (doc. # 29).

1

<u>BACKGROUND</u>

I. <u>Factual Background</u>

   On January 12, 2005, Plaintiff refinanced his mortgage by executing a promissory note (the "Note") in the amount of $626,400.00 which was secured by a deed of trust (the "Deed of Trust") encumbering real property located at 504 King William, San Antonio, Texas 78204 (the "Subject Property"). ("MSJ," Doc. # 28, Exs. A-1, A-2.) Both the Note and the Deed of Trust list Defendant as the lender. (<u>Id.</u>) Plaintiff and Defendant also entered into a "Waiver of Escrow Account" contract, whereby Defendant agreed to waive its requirement that Plaintiff establish an escrow account and Plaintiff agreed to pay his property taxes "when due and before any penalties are levied." (<u>Id.</u> Ex. A-3, Ex. A at 25:6–16.) In the Deed of Trust, Plaintiff agreed to pay Defendant funds for escrow items, including taxes, unless Defendant waived Plaintiff's obligation. (<u>Id.</u> Ex. A-2 ¶ 3, Ex. A at 20:8–25.) Plaintiff also agreed that, if he failed to pay property taxes in accordance with the terms of the Deed of Trust, Defendant could revoke the waiver of escrow account. (<u>Id.</u> Ex. A-2 ¶ 3.)

   In 2008, Plaintiff elected to pay his yearly property taxes pursuant to a "split-option" payment plan offered by Bexar County, choosing to pay half of his taxes during the first half of the year and to defer payment of the second half until

later in the year.  (Id. Ex. A at 6:1–21.)  There is no dispute that Plaintiff never

sought Defendant's approval of this "split-option" payment plan.  (See id. at

6:17–7:4.)  When Plaintiff paid the first half of his yearly taxes pursuant to the

split-option payment plan, Defendant paid the remaining, deferred property taxes

and established an escrow account.  (MSJ at 4.)  For the next several years,

Defendant continued to make property tax payments on Plaintiff's behalf in this

fashion.  (See id. Ex. A at 44:8–10.)

        In 2011, Defendant paid at least half of the amount owing for

Plaintiff's 2010 property taxes.  (Id.)  That year, Plaintiff had disputed the amount

of the 2010 tax assessment against the Subject Property with the Bexar County

Appraisal District.  (Doc. # 14 ¶ 6.)  Eventually, Plaintiff entered into a settlement

with the tax authorities.  (MSJ, Ex. A at 45:8–12.)  As a result of the settlement,

Plaintiff received a partial refund of the property taxes that Defendant had paid on

his behalf for 2010, which Plaintiff deposited into his bank account.  (Id. at

44:6–17.)

        Since September 2011, Plaintiff has ceased making mortgage

payments to Defendant, instead placing the money into an account held by his

attorney's office.  (See id. at 36:13–16.)  Defendant has only reported two loan

payments as late to credit agencies (see id. at 35:2–22), and these reports

correspond to Plaintiff's failure to repay Defendant for the 2010 property taxes

tendered to the taxing authorities on Plaintiff's behalf (see id. Ex. A-4).

II.      Procedural Background

On August 9, 2011, Plaintiff filed his First Original Petition for

Injunctive Relief and Damages and Requests for Disclosure ("Original

Complaint") in the 438th Judicial District Court of Bexar County, Texas.  (Doc.

# 1, Ex. 2.)  On September 29, 2011, Defendant removed the lawsuit to this Court

based on diversity jurisdiction.  (Doc. # 1.)

On October 6, 2011, Defendant filed a Motion to Dismiss Plaintiff's

Original Complaint for failure to state a claim.  (Doc. # 3.)  Plaintiff filed a

response in opposition to the Motion to Dismiss, which included a motion for

sanctions based on the parties' disagreement over whether Plaintiff had stated a

claim.  (Doc. # 6.)  On February 16, 2012, Plaintiff filed his First Amended

Petition for Injunctive Relief and Damages ("First Amended Complaint").

("FAC," Doc. # 14.)  The Court found that the First Amended Complaint rendered

moot Defendant's Motion to Dismiss.

In the First Amended Complaint, Plaintiff alleges that Defendant

improperly paid his 2010 property taxes.[1]  (FAC ¶ 6; MSJ, Ex. A at 11:3–8.)  More

specifically, Plaintiff contends that it was improper for Defendant to make

payments to the taxing authorities while he was disputing his taxes.  (FAC ¶ 6.)  He

further alleges that Defendant wrongfully made reports to credit agencies reflecting

that Plaintiff was not current on his escrow payments, thereby damaging his credit

score.  (Id. ¶ 7.)  Based on these allegations, Plaintiff brings claims for breach of

contract and for violations of the Texas Deceptive Trade Practices Act[2]

("TDTPA") and the Texas Debt Collection Act[3] ("TDCA").  (Id. ¶¶ 8–17.)

Plaintiff also seeks injunctive relief "to have Defendant perform each and every act

to restore Plaintiff's good credit."  (Id. ¶ 22.)

On March 5, 2012, Defendant filed a Motion to Dismiss Plaintiff's

First Amended Complaint.  (Doc. # 16.)  On March 6, 2012, the Court conducted a

motions hearing, at which time Plaintiff withdrew his motion for sanctions.  Ruling

from the bench, the Court denied without prejudice Plaintiff's request for

injunctive relief (doc. # 14) and also denied without prejudice Defendant's second

Motion to Dismiss (doc. # 16).  (See Doc. # 21.)

---

[1]  Plaintiff does not allege Defendant improperly paid his property taxes for the 2008 or 2009 tax years.

[2]  Tex. Bus. & Com. Code § 17.41 et seq.

[3]  Tex. Fin. Code § 392.001 et seq.

On October 17, 2012, Defendant filed a Motion for Summary Judgment.  (Doc. # 28.)  On October 31, 2012, Plaintiff filed a Motion for Leave to File Amended Pleadings (doc. # 29) and a response in opposition to Defendant's Motion for Summary Judgment (doc. # 30).  On November 6, 2012, Defendant filed a reply in support of its Motion for Summary Judgment (doc. # 31) and, soon thereafter, a response in opposition to Plaintiff's motion (doc. # 32).  On November 14, 2012, Plaintiff filed a reply in support of his Motion for Leave to File Amended Pleadings (doc. # 33) and a proposed Second Amended Complaint (doc. # 34).

The case was reassigned to the undersigned on January 2, 2013.  (Doc. # 38.)  The Court held a hearing on Defendant's Motion for Summary Judgment and Plaintiff's Motion for Leave to File Amended Pleadings in April 2013.  (Doc. # 45.)  At the hearing, the Court advised the parties that they would be granted an opportunity to settle the case before the Court ruled on the motions.  Because the parties have not informed the Court that a settlement has been reached, the Court now addresses the merits of the motions.

STANDARD OF REVIEW

Summary judgment is granted under Federal Rule of Civil Procedure 56 when "the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a);

see also Cannata v. Catholic Diocese of Austin, 700 F.3d 169, 172 (5th Cir. 2012).

The main purpose of summary judgment is to dispose of factually unsupported

claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).

  The moving party bears the initial burden of demonstrating the

absence of any genuine issue of material fact.  Id. at 323.  If the moving party meets

this burden, the non-moving party must come forward with specific facts that

establish the existence of a genuine issue for trial. ACE Am. Ins. Co. v. Freeport

Welding & Fabricating, Inc., 699 F.3d 832, 839 (5th Cir. 2012).  In deciding

whether a fact issue has been created, "the court must draw all reasonable

inferences in favor of the nonmoving party, and it may not make credibility

determinations or weigh the evidence."  Reeves v. Sanderson Plumbing Prods.,

Inc., 530 U.S. 133, 150 (2000).  However, "[u]nsubstantiated assertions,

improbable inferences, and unsupported speculation are not sufficient to defeat a

motion for summary judgment."  Brown v. City of Hous., 337 F.3d 539, 541 (5th

Cir. 2003).  "Where the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party, there is no 'genuine issue for trial.'"

Matsuhita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)

(quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

<u>DISCUSSION</u>

In its Motion for Summary Judgment, Defendant argues that all of Plaintiff's causes of action—namely, his claims for breach of contract and for violations of the TDTPA and the TDCA—are preempted by the Fair Credit Reporting Act, 15 U.S.C. § 1681 <u>et seq.</u>, and also fail on their merits.  For the reasons that follow, the Court finds that this case does not present any genuine issue of material fact, and Defendant is entitled to judgment as a matter of law.

I.    <u>Res Judicata and Collateral Estoppel</u>

As a preliminary matter, Plaintiff argues that Defendant may not reassert any arguments previously brought in Defendant's Motion to Dismiss (doc. # 16) because such arguments are barred by the doctrines of <u>res judicata</u> and collateral estoppel.  (Doc. # 30.)  Both <u>res judicata</u> and collateral estoppel apply to a "prior judgment" that was "final and on the merits."  <u>See</u> <u>Davis v. Dallas Area Rapid Transit</u>, 383 F.3d 309, 313 (5th Cir. 2004) (discussing the elements of <u>res judicata</u>); <u>see also</u> <u>Am. Home Assurance Co. v. Chevron, USA, Inc.</u>, 400 F.3d 265, 272 (5th Cir. 2005) (discussing the elements of collateral estoppel).  Here, the Court denied Defendant's Motion to Dismiss without prejudice on March 6, 2012 and did not reach the merits of the motion.  (<u>See</u> Doc. # 21.)  Additionally, the Court has not rendered final judgment on any of Plaintiff's claims.  Because there

has been no final judgment on the merits of Plaintiff's claims, the doctrines of <u>res judicata</u> and collateral estoppel are inapplicable and, accordingly, Plaintiff's argument fails.

II.     <u>Preemption under the FCRA</u>

Defendant contends that Plaintiff's claims, which are all brought under Texas state law, rest on the allegation that Defendant "continues to mak[e] reports to credit agencies, alleging that Plaintiff is not current on his payments, although Defendant [sic] is current." (<u>See</u> FAC ¶¶ 5, 7.) As such, Defendant argues that Plaintiff's claims are preempted by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 <u>et seq.</u>, and therefore must be dismissed.[4]

Congress enacted the FCRA in 1970 "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." <u>Safeco Ins. Co. of Am. v. Burr</u>, 551 U.S. 47, 52 (2007) (citing 15 U.S.C. § 1681). To this end, the FCRA requires that credit reporting agencies "follow procedures in reporting consumer credit information that both meet the needs of commerce and are fair and equitable to the consumer." <u>Saunders v. Branch</u>

---

[4] In his Response to Defendant's Motion for Summary Judgment, Plaintiff argues that Defendant did not raise preemption under the FCRA as an affirmative defense in its Answer. (<u>See</u> Doc. # 30 ¶ 12.) However, Plaintiff has since retracted this allegation. (Doc. # 33.)

Banking & Trust Co. of VA, 526 F.3d 142, 147 (4th Cir. 2008) (citation omitted)

(internal quotation marks omitted).  The Act also imposes certain duties upon

"furnishers of information" to consumer reporting agencies.  See 15 U.S.C.

1681s-2 (delineating the "[d]uty of furnishers of information to provide accurate

information" and the "[d]uties of furnishers of information upon notice of

dispute").

    Of particular relevance to this case, the FCRA contains two

preemption provisions: § 1681h(e) and § 1681t(b)(1)(F).  Congress enacted

1681h(e) in 1970 as part of the original legislation.  Macpherson v. JPMorgan

Chase Bank, N.A., 665 F.3d 45, 47 (2d Cir. 2011).  Section 1681h(e) provides:

> [N]o consumer may bring any action or proceeding in the nature of
> defamation, invasion of privacy, or negligence with respect to
> reporting of information against . . . any person who furnishes
> information to a consumer reporting agency . . . except as to false
> information furnished with malice or willful intent to injure such
> consumer.

15 U.S.C. § 1681h(e).  In other words, § 1681h(e) preempts only a narrow class of

tort claims where a plaintiff does not meet the heightened standard of malice or

willfulness.

In 1996, over twenty years after the FCRA first took effect, Congress amended the Act to include a new preemption provision—§ 1681t(b)(1)(F). Macpherson, 665 F.3d at 47. Section 1681t(b)(1)(F) provides:

> No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . .

15 U.S.C. § 1681t(b)(1)(F). By its plain terms, § 1681t(b)(1)(F) appears to expansively preempt all causes of action "imposed under the laws of any State" pertaining to the duties of furnishers of information under the FCRA.

Importantly, in the 1996 amendment, Congress did not remove or alter the original 1970 preemption provision. Courts have since struggled to reconcile the two provisions. See Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1166 (9th Cir. 2009) ("Attempting to reconcile [§ 1681h(e) and § 1681t(b)(1)(F)] has left district courts in disarray."). On the one hand, the 1970 provision—which appears to remain in effect—only preempts a narrow class of tort claims against information furnishers. On the other hand, the plain language of the newer 1996 provision broadly preempts "the laws of any State" regarding the duties of information furnishers.

11

Courts have taken at least three different approaches to reconciling the competing FCRA preemption provisions.  Himmelstein v. Comcast of the Dist., L.L.C., No. 12–1475(JEB), --- F. Supp. 2d ----, 2013 WL 1137048, at *8 (D.D.C. Mar. 20, 2013).  The three approaches are commonly referred to as (1) the "temporal" approach, (2) the "statutory" approach, and (3) the "total" approach. Id.  While the Fifth Circuit has not expressly adopted a particular approach, both the Second and Seventh Circuits have followed the "total" approach.  See Macpherson, 665 F.3d at 48; Purcell v. Bank of Am., 659 F.3d 622, 625 (7th Cir. 2011).  Each approach is discussed in turn.

    A.    Temporal Approach

Under the "temporal" approach, courts have held that the 1996 preemption provision only applies to state claims arising after a furnisher of information receives notice of a dispute, while the original 1970 provision applies to claims prior to that notice.  See, e.g., Bank One, N.A. v. Colley, 294 F. Supp. 2d 864, 869 (M.D. La. 2003); Aklagi v. Nationscredit Fin., 196 F. Supp. 2d 1186, 1194–96 (D. Kan. 2002).  As described above, the 1996 preemption provision provides that no state-law claims may be asserted "with respect to any subject matter regulated under . . . section 1681s-2."  15 U.S.C. § 1681t(b)(1)(F).  The "temporal" approach is based on a finding that the duties of furnishers of

information under § 1681s-2 only arise upon notice of a dispute.  See Colley, 294

F. Supp. 2d at 869.

However, the Court disagrees with this characterization of § 1681s-2.

While § 1681s-2(b) and certain portions of § 1681s-2(a) require notice of a dispute

to trigger their protections, several duties under § 1681s-2(a) do not rest upon

"notice" of a dispute.  For example, § 1681s-2(a)(2) provides that a furnisher of

information has a duty to "correct and update information" that it determines "is

not complete or accurate."  15 U.S.C. § 1681s-2(a)(2).  This duty is not predicated

on any notification that the consumer disputes the information, but rather on the

furnisher of information's own determination that the information is inaccurate.

Additionally, § 1681s-2(a)(1)(A) contains a blanket prohibition on reporting

information relating to a consumer that the furnisher "knows or has reasonable

cause to believe" is "inaccurate."  Id. § 1681s-2(a)(1)(A).  Because all of the duties

delineated in § 1681s-2 do not depend on notice of a dispute, the "temporal"

approach rests on a flawed reading of the statute.

While a number of courts have adopted the "temporal" approach,

others have considered it "strained at best."  Manno v. Am. Gen. Fin. Co., 439 F.

Supp. 2d 418, 426 (E.D. Pa. 2006) (citations omitted).  One court aptly noted: "It

seems odd . . . that Congress intended to protect furnishers of information more

once they have knowledge that a consumer is disputing an item on his credit report; one would, logically, expect the opposite policy." Johnson v. Citimortgage, Inc., 351 F. Supp. 2d 1368, 1375 (N.D. Ga. 2004) (citation omitted).  This Court agrees that the perverse results of reading the two preemption provisions in such a way render this approach unattractive.  Moreover, neither of the parties have urged the Court to adopt it and, as described above, it lacks textual support.  The Court, therefore, declines to adopt the "temporal" approach.

B.    Total Approach

The "total" approach, which has been adopted by the Second and Seventh Circuits, provides that § 1681t(b)(1)(F) preempts all state-law claims against furnishers of information, even willful violations of state common law.  See Macpherson, 665 F.3d at 48 ("[T]he operative language in § 1681h(e) provides only that the provision does not preempt a certain narrow class of state law claims; it does not prevent the later-enacted § 1681t(b)(1)(F) from accomplishing a more broadly-sweeping preemption."); Purcell, 659 F.3d at 625 ("Section 1681h(e) preempts some state claims that could arise out of reports to credit agencies; § 1681t(b)(1)(F) preempts more of these claims.").  Although the "total" approach gives effect to the plain meaning of § 1681t(b)(1)(F), some courts have criticized it as rendering § 1681h(e) superfluous.  See, e.g., Manno, 439 F. Supp. 2d at 424.

14

C.     Statutory Approach

The "statutory" approach holds that Congress intended the 1996

provision preempting "the laws of any State" to apply only to state statutes, but not

to state common law. See, e.g., Carlson v. Trans Union, LLC, 259 F. Supp. 2d

517, 521 (N.D. Tex. 2003); Manno, 439 F. Supp. 2d at 429. The Seventh Circuit

has critiqued this approach, explaining that the Supreme Court rejected the

conclusion that the term "laws" in a federal statute refers to state statutes, but not

state common law, when it overruled Swift v. Tyson, 41 U.S. 1 (1842) in Erie R.R.

v. Tompkins, 304 U.S. 64 (1938). See Purcell, 659 F.3d at 623. Ultimately, the

Seventh Circuit held that the reference to state "laws" under § 1681t(b)(1)(F)

encompasses "all sources of legal rules, including judicial opinions." See id.

At least one district court has noted that the Fifth Circuit may have

implicitly adopted the "statutory" approach. See Meisel v. USA Shade & Fabric

Structures Inc., 795 F. Supp. 2d 481, 488 (N.D. Tex. 2011). In Young v. Equifax

Credit Info. Servs., Inc., 294 F.3d 631 (5th Cir. 2002), the Fifth Circuit affirmed

summary judgment in favor of the defendant on the plaintiff's state-law tort claims

because the plaintiff produced no evidence supporting an inference that the

defendant acted "with malice or willful intent." Id. at 638. Similarly, in Morris v.

Equifax Info. Servs., LLC, 457 F.3d 460 (5th Cir. 2006), the Fifth Circuit affirmed

summary judgment in favor of the defendant on the plaintiff's state-law libel claim where the plaintiff provided no evidence of malice.  Id. at 471–72.  The district court in Meisel concluded that Young and Morris "suggest that the Fifth Circuit continues to recognize the independent force of section 1681h(e), and the exception to preemption provided therein, notwithstanding the broader preemption provision of section 1681t(b)(1)(F)."  Meisel, 795 F. Supp. 2d at 488.

Here, the Court need not choose between the "statutory" and "total" approaches because both yield the same result in this case.  In the First Amended Complaint, Plaintiff asserts claims under the TDTPA and the TDCA based on Defendant's alleged failure to accurately report Plaintiff's credit.  Because Plaintiff's claims are grounded in state statute and concern Defendant's reporting duties under § 1681s-2 of the FCRA, his claims under the TDTPA and the TDCA are preempted under both the "statutory" and "total" approaches.  Accordingly, the Court grants Defendant summary judgment on Plaintiff's TDTPA and TDCA claims.

Although Defendant argues to the contrary, Plaintiff's breach of contract claim is not preempted under either the "statutory" or "total" approaches.  Under the "statutory" approach, Plaintiff's breach of contract claim falls outside the purview of § 1681t(b)(1)(F) because it does not derive from state statute and

also falls outside the narrow scope of § 1681h(e) because it is not a tort-based claim.  Under the "total" approach, Plaintiff's breach of contract claim is not preempted because it is not a "requirement or prohibition . . . imposed under the laws of any State," as required by § 1681t(b)(1)(F), but rather is an obligation imposed by the contracting parties upon themselves.  See Leet v. Cellco P'ship, 480 F. Supp. 2d 422, 432 (D. Mass. 2007).

   In Cipollone v. Liggett Grp., Inc., 505 U.S. 504 (1992), the Supreme Court analyzed a preemption provision similar to § 1681t(b)(1)(F) under 15 U.S.C. § 1334(b), which preempts "requirement[s] or prohibition[s] . . . imposed under State law."  Id. at 521.  The Supreme Court explained that this provision did not preempt the plaintiff's claim for breach of express warranty because "a common-law remedy for a contractual commitment voluntarily undertaken should not be regarded as a 'requirement . . . imposed under State law.'"  Id. at 526.  This is because "common understanding dictates that a contractual requirement, although only enforceable under state law, is not 'imposed' by the State, but rather is 'imposed' by the contracting party upon itself."  Id. at 525 n.24.  Like the preemption provision in Cipollone, § 1681t(b)(1)(F) only preempts claims "imposed under the laws of any State."  See 15 U.S.C. § 1681t(b)(1)(F).  Here, the parties voluntarily undertook their contractual obligations under the Note and the

Deed of Trust. Thus, Plaintiff's breach of contract claim is not preempted under the "total" approach because it is not "imposed" under the laws of any state.

Additionally, the Court notes that the harm alleged by Plaintiff in his breach of contract claim does not merely rest on Defendant's alleged wrongful credit reporting, but also on allegations that Defendant improperly charged Plaintiff—thereby adding to his loan obligations—for the 2010 property taxes paid on Plaintiff's behalf. The latter is not subject matter regulated by the FCRA. Thus, the entirety of Plaintiff's breach of contract claim is also not preempted for this reason.

II.    Breach of Contract Claim

In the First Amended Complaint, Plaintiff contends that Defendant breached the Deed of Trust because it "paid taxes that were not currently due, and charged Plaintiff for the taxes, claiming that Plaintiff owed them." (FAC ¶ 20.) More specifically, Plaintiff contends it was improper for Defendant to make payments to the taxing authorities on his 2010 property taxes because he had a "split-option" payment agreement with Bexar County and because he disputed the amount of taxes owed. He further maintains that he suffered damages from this alleged breach because Defendant reported late payments to credit agencies and Plaintiff's credit score decreased.

Defendant, on the other hand, contends that it properly paid Plaintiff's 2010 property taxes to preserve its lien priority on the Subject Property and to avoid a potential foreclosure by the taxing authorities.  (MSJ at 7.)  Defendant argues that it is entitled to summary judgment because Defendant's payments were proper under the terms of the Deed of Trust.

Under Texas law, the "essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."  Smith Int'l, Inc. v. Egle Grp., LLC, 490 F.3d 380, 387 (5th Cir. 2007) (citing Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C., 51 S.W.3d 345, 351 (Tex. App. 2001)).

There is no dispute that a valid mortgage contract exists between Plaintiff and Defendant.  However, Plaintiff fails to establish the third element of a breach of contract claim—namely, that Defendant breached the Deed of Trust. According to § 32.01 of the Texas Tax Code, "[o]n January 1 of each year, a tax lien attaches to property to secure the payment of all taxes, penalties, and interest ultimately imposed for the year on the property, whether or not the taxes are imposed in the year the lien attaches."  Tex. Tax Code. § 32.01(a).  Such a lien perfects on attachment.  Id. § 32.01(d).  Thus, a tax lien attached to the Subject

Property on January 1, 2010 in the amount of property taxes due for that year, and the lien perfected on attachment.  A tax lien is, by definition, superior to Defendant's mortgage lien on the Subject Property.  See id. § 32.05(b)(2) ("[A] tax lien provided by [Chapter 32] takes priority over . . . the claim of any holder of a lien on property encumbered by the tax lien[.]").  Thus, because Plaintiff permitted deferred taxes to accrue on the Subject Property in 2010, this created a tax lien superior to Defendant's lien.

Plaintiff argues that Defendant should not have paid the tax lien because Plaintiff entered into a "split-option" payment plan with Bexar County that authorized the deferral of payment of half of the taxes.  However, such an agreement did not excuse Plaintiff's obligations under the Deed of Trust, which provides that Plaintiff "shall promptly discharge any lien which has priority over this Security Instrument" unless "Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender . . ."  (MSJ, Ex. A-2 at 5 ¶ 4.)  The Deed of Trust also provides that Plaintiff "shall pay all taxes, assessments, charges, fines and impositions" that may attain priority over Defendant's lien.  (Id.)

Even where a borrower has a statutory right to defer payment of property taxes, courts have held that such a deferment does not excuse a

borrower-mortgagor's obligations under the deed of trust.  See Lyles v. Deutsche Bank Nat'l Trust Co., No. G-09-300, 2011 WL 96591, at *3 (S.D. Tex. Jan. 11, 2012) ("[W]hile the plaintiffs had a legal right to defer the payment of real estate taxes assessed against their homestead, that right does not trump their prior obligation to timely pay these same taxes upon assessment."); Walton v. Wells Fargo Bank, N.A., No. H-10-2875, 2011 WL 3882276, at *5 (S.D. Tex. Sept. 2, 2011) ("[Plaintiffs'] tax deferral did not excuse them of their prior obligation under the . . . Deed of Trust."); Mechali v. CTX Mortg. Co., No. 4:11-CV-114, 2011 WL 5006511, at *4 (E.D. Tex. Sept. 28, 2011) (same).

Here, Plaintiff's decision to defer his 2010 property taxes did not abrogate his contractual obligations under the Deed of Trust.  Under the terms of the Deed of Trust, if Plaintiff "fails to perform the covenants and agreements contained in [the Deed of Trust], . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the property," including "paying any sums secured by a lien which has priority over [the Deed of Trust]." (MSJ, Ex. A-2 ¶ 9.)  Because the tax lien on the Subject Property took priority over Defendant's mortgage lien, Defendant had authority under the Deed of Trust to create an escrow account and to pay the outstanding taxes at the time of assessment—on January 1, 2010.  Thus, Defendant's decision to pay the second

21

half of Plaintiff's 2010 property taxes did not breach the terms of the Deed of Trust.

Additionally, to the extent Plaintiff argues that the property taxes paid by Defendant were not "due" because he disputed the value of those taxes, this argument fails. The Texas Tax Code allows property owners to challenge the property tax assessed on their property by either (1) paying, under protest, the entirety of the tax demanded or (2) paying only that portion of the taxes not in dispute. <u>See</u> Tex. Tax Code § 42.08(b). Even if Plaintiff was permitted by statute to withhold payment of the disputed portion of his 2010 property taxes, again, this does not excuse his obligation under the Deed of Trust to promptly pay any lien on the Subject Property that is superior to Defendant's mortgage lien.

Plaintiff also argues that Defendant improperly charged Plaintiff additional fees and interest in connection with the 2010 property tax payments. (FAC ¶ 20.) However, the Deed of Trust expressly provides that Defendant may charge such interest. According to Paragraph 9 of the Deed of Trust, a disbursement made by Defendant to pay a superior lien "shall become additional debt of Borrower secured by this Security Instrument" and it "shall bear interest at the Note rate." (MSJ, Ex. A-2 ¶ 9.) Moreover, Plaintiff's allegation lacks factual support because Plaintiff admitted in his deposition testimony that he was not

charged any interest or fees on the 2010 property taxes paid by Defendant.  (Id. Ex.

A at 45:23–25.)  Thus, Plaintiff has not shown that Defendant breached the terms

of the Deed of Trust by making 2010 property tax payments on his behalf, and his

breach of contract claim fails as a matter of law.

      The Court notes that Plaintiff also has not established the second

element of a breach of contract claim—namely, that he performed under the

contract.  See Smith Int'l, 490 F.3d at 387.  Plaintiff had an obligation under the

Deed of Trust to promptly discharge the 2010 tax lien because the lien was

superior to Defendant's mortgage lien.  Instead, Plaintiff chose to defer payment of

his 2010 property taxes under a "split-option" payment plan without Defendant's

permission (as required by the Deed of Trust in paragraph 4) and to withhold

payment of disputed property taxes.  Because he failed to satisfy his own

contractual obligations under the Deed of Trust, Plaintiff cannot maintain a breach

of contract claim against Defendant.  "It is a well established rule that a party to a

contract who is himself in default cannot maintain a suit for its breach."  Dobbins

v. Redden, 785 S.W.2d 377, 378 (Tex. 1990) (internal quotation marks omitted).

      Because Plaintiff fails to establish the second and third elements of a

breach of contract claim, the Court does not reach the fourth element.  Even

construing the facts in a light most favorable to Plaintiff, Defendant is entitled to judgment as a matter of law with respect to Plaintiff's claim for breach of contract.

III.    TDCA and TDTPA Claims

Even if Plaintiff's TDCA and TDTPA claims were not preempted by the FCRA, Defendant would still be entitled to summary judgment on these claims, which rest on Plaintiff's erroneous contention that Defendant improperly paid for a portion of Plaintiff's 2010 property taxes.  Plaintiff bases his TDCA claim on the allegation that Defendant misrepresented the amount of Plaintiff's debt on the mortgage loan in violation of § 392.304(a)(8) of the Texas Finance Code.[5]  (See FAC ¶ 14.)  Similarly, Plaintiff alleges that Defendant violated § 17.50 and § 17.46 of the TDTPA by misrepresenting that Plaintiff was behind on his mortgage loan payments and that the loan was delinquent.  (See id. ¶¶ 8–9.)  Because, as described above, the Court has rejected Plaintiff's interpretations of the Texas Tax Code and the Deed of Trust, his allegations that Defendant engaged in deceptive or unfair practices by paying Plaintiff's 2010 property taxes and later charging

─────────────────────

[5]  Defendant argues that Plaintiff lacks statutory standing to bring claims under the TDCA because he is not a "consumer."  (Doc. # 28 at 15.)  However, the Court assumes without deciding that Plaintiff possesses statutory standing.  See Taylor v. Acxiom Corp., 612 F.3d 325, 339–40 (5th Cir. 2010) (finding that the court need not address statutory standing because it affirmed the district court's dismissal under Federal Rule of Civil Procedure 12(b)(6)).

Plaintiff for that amount fail as a matter of law.  Thus, Defendant is entitled to summary judgment on Plaintiff's TDTPA and TDCA claims on this alternative basis.

IV.    Claim for Injunctive Relief

Plaintiff seeks a "temporary injunction" enjoining Defendant "from failing to report Plaintiff's timely payments" and "from failing to restore Plaintiff's credit."  (FAC ¶ 25.)  To obtain a preliminary injunction, a plaintiff must demonstrate:

> (1) a substantial likelihood of success on the merits of the movant's claims; (2) a substantial threat that movant will suffer irreparable injury if the injunction is not granted; (3) the threatened injury to the movant outweighs any harm that the other party might suffer if the injunction is entered; and (4) an injunction will not disserve the public interest.

Anderson v. Jackson, 556 F.3d 351, 360 (5th Cir. 2009) (citing Canal Auth. v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974)).  Injunctive relief is "an extraordinary and drastic remedy"; it should only be granted when the movant has clearly carried the burden of persuasion.  Id. (citing Holland Am. Ins. Co. v. Succession of Roy, 777 F.2d 992, 997 (5th Cir. 1985)).

For the reasons given above, Plaintiff's claims all fail as a matter of law.  Injunctive relief is, accordingly, inappropriate.

25

V.  <u>Motion to Amend</u>

Federal Rule of Civil Procedure 16(b) governs the amendment of pleadings after a scheduling order deadline has expired.  <u>S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA</u>, 315 F.3d 533, 536 (5th Cir. 2003).  When a motion for leave to amend is filed after the applicable deadline, "[o]nly upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." <u>Id.</u>

Plaintiff seeks leave to file a proposed Second Amended Complaint. (Docs. ## 29, 34.)  The deadline for Plaintiff "to file a motion seeking leave to amend pleadings" was February 16, 2012.  (Doc. # 13 at 2.)  Plaintiff filed his motion to amend more than six months after that deadline passed, on October 31, 2012.  (Doc. # 29.)  Because Plaintiff's motion for leave to amend was filed after the applicable deadline set by the Scheduling Order, Plaintiff must show good cause to modify the Scheduling Order.

Whether "good cause" exists to modify a scheduling order primarily centers on the diligence of the party seeking the modification.  <u>See</u> <u>Marathon Fin. Ins., Inc. v. Ford Motor Co.</u>, 591 F.3d 458, 470 (5th Cir. 2009).  The Fifth Circuit has held that four factors are relevant to determining whether good cause exists:

26

"(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." Id. (citations omitted) (internal quotation marks omitted).

In this case, Plaintiff fails to make a showing of "good cause" for modification of the Scheduling Order.  Plaintiff seeks to bring a new claim under the FCRA.  However, Plaintiff's claim does not rely upon any new facts or law, and Plaintiff does not provide a reason why he could not have added this claim earlier.  Plaintiff also asserts that he is a third-party beneficiary to the Consent Judgment entered in United States v. Bank of Am., No. 1:12-cv-00361, in the United States District Court for the District of Columbia and seeks to bring a cause of action for breach of this agreement.  Because the Consent Judgment was finalized in April 2012, seven months before Plaintiff sought leave to amend, there is no reason why Plaintiff could not have added this claim sooner.  At this point in the proceedings, more than six months after the deadline passed for amendment of pleadings, to allow Plaintiff to add new claims would prejudice Defendant by further delaying the final disposition of this action.  Because Plaintiff has failed to demonstrate good cause for amendment, the Court denies Plaintiff's Motion for Leave of Court to Amend Pleadings.

The Court notes that Plaintiff's motion fares no better under the more generous standard of Federal Rule of Civil Procedure 15(a). "Under Rule 15(a), 'leave to amend shall be freely given when justice so requires,' and should be granted absent some justification for refusal." Willard v. Humana Health Plan of Tex. Inc., 336 F.3d 375, 386 (5th Cir. 2003) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). However, a court need not grant a plaintiff leave to amend where amendment would be futile. See Foman, 371 U.S. at 182. The Fifth Circuit has held that amendment is futile where "the amended complaint would fail to state a claim upon which relief could be granted" under the same standard of legal sufficiency that applies under Rule 12(b)(6). Stripling v. Jordan Prod. Co., LLC, 234 F.3d 863, 873 (5th Cir. 2000).

In this case, Plaintiff's proposed Second Amended Complaint fails to state a claim under Rule 12(b)(6). First, Plaintiff's claims for breach of contract and for violations of the TDTPA and TDCA fail for the reasons already given above. Second, Plaintiff's new claims for violations of the FCRA and for breach of the Consent Judgment also fail to state a claim for the reasons that follow.

A.     FCRA Claims

Defendant argues that the facts as alleged in the proposed Second Amended Complaint do not support a claim against it under § 1681s–2(b). Section

1681s-2(b) applies "if a consumer disputes the accuracy of information that the furnisher reports" to a credit reporting agency.  <u>Saunders</u>, 526 F.3d at 148.  The statutory language of  § 1681s–2(b) "makes clear that the duties created by § 1681s–2(b) do not arise until the furnisher of information receives notice from a credit reporting agency ("CRA"), pursuant to § 1681i(a)(2), that a consumer is disputing credit information."  <u>Colley</u>, 294 F. Supp. 2d at 870.

Here, Defendant argues that Plaintiff has not pleaded facts to indicate that any CRA contacted Defendant.  However, Plaintiff has pleaded that he notified "credit bureaus CSC Credit Services, Equifax, Transunion, [and] Experian" of Defendant's "error" in charging him for the 2010 property taxes.  (Doc. # 34 ¶ 19.)  Thus, the only allegation missing from the proposed Second Amended Complaint is that the CRAs fulfilled their legal responsibility to notify Defendant.  Typically, this is not information that a plaintiff has access to at the pleading stage and thus cannot serve as a basis for dismissal of a FCRA claim.  <u>See</u> <u>Himmelstein</u>, 2013 WL 1137048, at *5–6 (denying a motion to dismiss a FCRA claim even where there was no express allegation of notice from the CRA to the furnisher).  Nonetheless, discovery closed in this case over six months ago; at this stage of the proceedings, Plaintiff fails to state a claim under the FCRA because he has not alleged that the CRAs provided notice of a dispute to Defendant.

More importantly, Plaintiff has not pleaded any facts giving rise an inference of any inaccuracy in Defendant's credit reporting because, as discussed above, Defendant had a contractual right under the Deed of Trust to pay Plaintiff's 2010 property taxes.  Because Plaintiff fails to state a claim under § 1681s–2(b), the Court does not reach the issue of whether a cause of action actually exists under that section.  See Young, 294 F.3d at 639 (refusing to decide whether § 1681s–2(b) gives rise to a private cause of action because the plaintiff did not produce facts that would support such a claim).

B.     Breach of Consent Judgment

Plaintiff seeks to bring a claim for breach of the Consent Judgment entered on April 4, 2012 as Docket Entry No. 10 in United States v. Bank of Am., No. 1:12-cv-00361-RMC, in the United States District Court for the District of Columbia.  According to Plaintiff, the Consent Judgment requires that Defendant "conform to certain servicing standards and [] extend to debtors certain remedies to mitigate the damages caused by its 'widespread questionable foreclosure practices.'"  (Doc. # 34 ¶ 23.)  Plaintiff cites a portion of the Consent Judgment which provides that Defendant "shall take appropriate action to promptly remediate any inaccuracies in borrower's account information, including . . . Correcting inaccurate reports to consumer credit reporting."  (Id. ¶ 25.)  Based on this

30

language, Plaintiff asserts that he "is an intended third party beneficiary of the consent judgment."  (Doc. # 29-1at 6–7.)

"A consent decree is akin to a contract yet also functions as an enforceable judicial order."  United States v. Chromalloy Am. Corp., 158 F.3d 345, 349 (5th Cir. 1998).  When interpreting a consent decree, general principles of contract interpretation govern.  Dean v. City of Shreveport, 438 F.3d 448, 460 (5th Cir. 2006).  Accordingly, a consent decree is "to be construed only by reference to the 'four corners' of the order itself."  Chromalloy, 158 F.3d at 350 (citing Robinson v. Vollert, 602 F.2d 87, 92 (5th Cir. 1979)).  "Courts should not impose their own terms within a consent decree and should read consent decree terms by their plain meaning."  United States v. Alcoa, Inc., 533 F.3d 278, 286 (5th Cir. 2008).

It is well settled that "a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefitted by it."  Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 750 (1975).  Despite this "seemingly sweeping prohibition" on suits by non-parties to a consent decree, several circuits have interpreted this statement to mean only that incidental third-party beneficiaries may not enforce a consent decree.  See Beckett v. Air Line Pilots Ass'n, 995 F.2d 280, 288 (D.C. Cir. 1993).

31

However, of particular relevance to this case, third-party beneficiaries of a government contract are generally assumed to be merely incidental beneficiaries and may not enforce the contract absent clear intent to the contrary.  Id. (citing Restatement (2d) of Contracts § 313(2) & cmt. a); accord Kremen v. Cohen, 337 F.3d 1024, 1029 (9th Cir. 2003).  Because the Consent Judgment is between the government and Defendant, Plaintiff is presumed to be merely an incidental beneficiary absent clear contractual intent to the contrary.

Here, Plaintiff has not pleaded any facts to support his conclusory allegation that he is an intended third-party beneficiary of the Consent Judgment. The Consent Judgment provides relief for certain "borrowers whose homes were finally sold or taken in foreclosure between and including January 1, 2008 and December 31, 2011" through an administrative claims process.  (See "Consent Judgment," No. 1:12-cv-00361-RMC (D.D.C. Apr. 4, 2012), Doc. # 10-1 at B4, C1–C2.)  It also provides relief for consumers who meet certain eligibility requirements pertaining to service members and permits certain borrowers refinancing relief.  (See id. at Ex. D.)  Here, the Subject Property was not sold or taken in foreclosure, and Plaintiff does not allege he is a service member, that he sought to refinance his mortgage, or that he meets the eligibility criteria for the

refinancing relief as a "consumer" under the Consent Judgment.  Accordingly, Plaintiff lacks standing to enforce the terms of the Consent Judgment.

Additionally, this is not the proper venue for an action to enforce the Consent Judgment.  The Consent Judgment provides: "Servicer's obligations under this Consent Judgment shall be enforceable <u>solely</u> in the U.S. District Court for the District of Columbia . . . by any Party to this Consent Judgment or the Monitoring Committee."  (Consent Judgment at E14–15 (emphasis added).)  Thus, by the plain terms of the consent decree, Plaintiff may <u>not</u> enforce the terms of the agreement in this Court, but must bring suit in the United States District Court for the District of Columbia.

Finally, because the Court has determined that Defendant did not breach the Deed of Trust by paying Plaintiff's 2010 property taxes, it is unclear how Defendant violated the Consent Judgment.  For all these reasons, Plaintiff fails to state a claim upon which relief can be granted for breach of the Consent Judgment.  The Court therefore denies Plaintiff leave to amend because amendment would be futile.

CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's

Motion for Summary Judgment (doc. # 28) and **DENIES** Plaintiff's Motion for

Leave of Court to Amend Pleadings (doc. # 29).  This action is **DISMISSED**.

IT IS SO ORDERED.

DATED: San Antonio, Texas, August 26, 2013.

_____
David Alan Ezra
Senior United States District Judge

34